UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOD JOB GAMES BILISM YAZILIM VE PAZARLAMA A., | Case No. 19-cv-07916-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |
| SAYGAMES LLC, et al., | Docket No. 103 |
| Defendants. | |

Plaintiff Good Job Games ("GJG") sued Defendant SayGames, LLC ("SG") for copyright infringement.  The Court initially dismissed GJG's amended complaint for failure to state a claim with leave to amend.  GJG never amended its complaint.  SG subsequently moved for attorney's fees under Section 505 of the Copyright Act.  In response, GJG filed a notice of voluntary dismissal without prejudice pursuant to Rule 41(a)(1).

Pending before the Court is SG's motion for attorney's fees.  Having considered the papers submitted as well as the oral argument of counsel, the Court hereby **GRANTS** the motion.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

GJG and SG are both mobile videogame developers.  In September 2019, GJG released a game called *Crazy Jump 3D*, in which players launch objects from a cannon and into a bucket by manipulating objects that alter their trajectory.  Docket No. 71 ("FAC") ¶ 50.  In October 2019, SG published its own game, *Cannon Shot!*, in which players fire balls from a cannon into a bucket by navigating them through various obstacles.  FAC ¶ 51.

GJG filed suit against SG on December 3, 2019, claiming that SG's mobile game *Cannon Shot!* infringes GJG's mobile game *Crazy Jump 3D*.  Docket No. 1.  SG moved to dismiss for lack

1  of personal jurisdiction and failure to state a claim.  Docket No. 20.  The Court granted SG's

2  motion to dismiss on jurisdictional grounds.  Docket No. 30.  GJG appealed, and the Ninth Circuit

3  reversed and remanded for jurisdictional discovery.  Docket No. 43, 44.

4         GJG filed an amended complaint following jurisdictional discovery.  Docket No. 71.  In a

5  motion to dismiss, SG renewed the arguments for lack of personal jurisdiction and failure to state

6  a claim.  Docket No. 75.  The Court found personal jurisdiction over SG but dismissed the

7  amended complaint for failure to state a claim on the merits of the copyright claim.  Docket No.

8  100 ("Order"), at 16.  In particular, the Court found that several of the common features between

9  *Crazy Jump 3D* and *Cannon Shot!* are unprotected because these features are inherent aspects of

10  physics puzzle games.  *Id*. at 14.  Moreover, the protected elements that remain (*i.e.*, colors,

11  decorative shapes, animations, design levels and layouts other than the basic design of the cannon

12  and bucket game) are not substantially similar across the games.  *Id*. at 15.  The Court concluded

13  that "[b]ecause the protected elements of the works are not substantially similar, GJG has no

14  viable copyright claim as a matter of law.  Thus, the Court dismisses the complaint for failure to

15  state a claim." *Id*. at 15–16.

16         The Court afforded GJG until January 6, 2023, to amend the complaint.  *Id*.  GJG failed to

17  file an amended complaint.  At the hearing herein, GJG confirmed it never intended to amend.

18         On January 20, 2023, SG moved for $133,976.17 in attorney's fees and costs pursuant to

19  Section 505 of the Copyright Act, asserting it was entitled to fees as the prevailing party.  Docket

20  No. 103 ("MAF").  Two days later, GJG filed a notice to voluntarily dismiss this action without

21  prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and asked that each party

22  bear its own costs and fees.  Docket No. 106.  On February 3, 2023, GJG submitted its opposition

23  to SG's motion for fees, arguing, *inter alia*, that SG is not entitled to attorney's fees and costs

24  under the Copyright Act because SG is not a prevailing party since GJG dismissed the complaint

25  without prejudice.  Docket No. 107 ("Opp.").  SG replied and requested an additional $34,790 for

26  attorney's fees and costs associated with this instant motion, bringing the total requested amount

27  to $165,351.17.  Docket No. 110 ("Repl.").

28

United States District Court
Northern District of California

2

United States District Court
Northern District of California

## II.   LEGAL STANDARD

A.   Prevailing Party

Section 505 of the Copyright Act allows a court to award "a reasonable attorney's fee to the *prevailing party* as part of the costs." 17 U.S.C. § 505 (emphasis added). Per the plain language of Section 505, a district court's "discretion to award attorney's fees . . . is triggered only if the party in fact prevailed on the copyright claim." *Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009) (citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996)).

B.   Discretionary Factors

Once a district court determines that the threshold requirement of "prevailing party" has been satisfied, it may then apply Section 505 by "first, deciding whether an award of attorney's fees is appropriate [through the balancing of several non-exclusive factors] and, second, calculating the amount of the award." *Id*. The factors identified by the Supreme Court for the first prong include "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence' . . . so long as such factors are faithful to the purposes of the Copyright Act." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016).

## III.   DISCUSSION

A.   Prevailing Party

The Court first considers the threshold issue of whether SG is a prevailing party in light of the Court's dismissal of GJG's complaint with leave to amend, GJG's failure to amend within the time allowed for amendment, and GJG's subsequent voluntary dismissal of the action without prejudice pursuant to Rule 41(a)(1).

Following the dismissal of a claim, a defendant is a prevailing party if the dismissal creates a "material alteration of the legal relationship of the parties." *Cadkin*, 569 F.3d at 1148. Material alteration exists, *inter alia*, where plaintiff's ability to "refil[e] the claim against the defendant in

federal court" is impeded.  *Id.* at 1150 (finding material alteration where "plaintiff is judicially precluded from refiling the claim against the defendant in federal court").  Typically, a dismissal without prejudice—unlike dismissal with prejudice—does not materially alter the legal relationship of the parties.  *Id.* at 1150 (holding that defendants are not prevailing party where the dismissal without prejudice does not deprive plaintiffs of the ability to refile their copyright claims in federal court); *Anderson*, 2020 WL 5057581, at *4 ("[D]ismissal with prejudice may serve as a basis for awarding attorney's fees to a defendant as the prevailing party.").  In this case, the Court did not dismiss without prejudice; it dismissed the complaint on the merits as a matter of law and gave leave to amend within 30 days which GJG failed to do.

GJG argues that the Court's dismissal with leave and GJG's voluntary dismissal without prejudice do not materially alter the parties' legal relationship because GJG remains free to refile copyright claim in federal court.  *See* Opp. at 2–6.  SG responds that after the time permitted for leave to amend expired, the dismissal in this particular case *precludes* GJG from refiling a copyright claim, at least a claim identical to the one in the FAC—the copyright infringement claim against the accused game at issue.  The Court thus examines the preclusive effect resulting from its dismissal of the parties.  In particular, the Court examines whether issue preclusion or claim preclusion would prevent GJG from refiling a copyright infringement claim against SG's accused game.

### 1.   Issue Preclusion

Future litigation of an issue presented and necessarily decided in a prior action between the same parties is foreclosed by the doctrine of issue preclusion.  *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980).  Issue preclusion applies when: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."  *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).  The Court addresses these elements in turn.

#### a.   Identical Issues

Should GJG bring another copyright suit against SG regarding the two games, any issue

4

sought to be relitigated would be identical to the issue decided in the Court's dismissal order, which necessarily decided the substantive issue of copyright infringement.  "For purposes of issue preclusion, 'necessarily decided . . . means only that the court undeniably decided the issue' in the previous proceedings." *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2019 WL 5781915, at *4 (N.D. Cal. Oct. 15, 2019) (quoting *U.S. v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001)).  An issue is necessarily decided where "a court hears 'evidence and argument from both parties, and specifically rule[s] on the issue,' a party may not escape the ruling's binging effect on the ground that it was not logically essential to the court's ultimate determination." *Id.* (citing *United States v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995)).  Here, the record is clear that the Court ruled on the merits.  It heard evidence and legal arguments from both parties.  It performed an "analytic dissection" between protected game features and unprotected game features.  Order at 13.  And it thoroughly discussed the substantial similarity between the protected elements of the two games, which was essential to the Court's rejection of the copyright claim.  Order at 12–15.  The Court necessarily decided the substantive issue of substantial similarity between potential elements, the *sine qua non* of GJG's copyright infringement claim against SG.

> b.   <u>Final Judgment</u>

The second element—a final judgment—is also met.  "A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983); RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982).  For preclusive effect, "a judgment will ordinarily be considered final in respect to a claim . . . if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. b (1982); *United States v. Arpaio*, 951 F.3d 1001, 1007 (9th Cir. 2020) (same).

Here, the Court's dismissal order was sufficiently firm to be conclusive and thus preclusive.  The Court fully considered the merits of each element of the copyright claim and concluded:  "Because the protected elements of the works are not substantially similar, GJG has no viable copyright claim as a *matter of law*.  Thus, the Court dismisses the complaint for failure

5

to state a claim." Order at 15–16 (emphasis added).  Because the decision found no infringement as a matter of law, the decision is "not tentative, provisional, or contingent."  The ruling was based on the merits and not, *e.g.*, a pleading technicality.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (holding that that an "adjudication on the merits" will bar refiling of the same claim in the same court).  No issues on the merits were left for future determination. Although the Court, in an abundance of caution, granted 30 days for leave to amend, the finality of the merits determination crystallized when GJG failed to file an amended complaint within the time permitted by this Court.  When the allotted time expired, GJG effectively stood on its complaint.  *See Karmo v. Morgan Creek Ent. Grp.*, No. CV 18-9148 PA (AGRX), 2019 WL 13095278, at *1 (C.D. Cal. June 28, 2019) (construing a plaintiff's failure to file a second amended complaint in the time permitted as "his election to stand on the strength of his [amended complaint]").

So long as the prior issue was adjudicated sufficiently firm and became final, as it is here, the Court need not have entered a formal Rule 58 judgment in order to render the ruling final for purposes of issue preclusion.  A primary function of entering a separate document setting forth the judgment is to set the time for making motions or appealing.  *See* Fed. R. Civ. Proc. 58 (Advisory Committee Notes, 2002 Amendment) ("The result of failure to enter judgment on a separate document is that the time for making motions under [certain rules] never begins to run.").  The Rule is intended to remove doubt about "starting the time running for post-verdict motions and for purpose of appeal."  *Id.*  Importantly, a ruling is final for purpose of issue and claim preclusion *irrespective* of any appeal.  *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) ("[I]n federal courts . . . the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.") (quoting WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 4433).  Another function of a formal judgment—to permit enforcement—is also immaterial to preclusion.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) (finding a decision final when it "represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication"); *see also AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 32 (1st Cir.

United States District Court
Northern District of California

1    2005) ("The Restatement does contemplate a possible softening of the traditional final judgment

2    requirement in certain cases involving issue preclusion.").

3          That GJG filed a dismissal under Rule 41(a) after a dismissal was entered on the merits

4    and after GJG opted not to amend does not defeat the finality vested in the Court's order of

5    dismissal.  The Ninth Circuit has held that "[i]t matters not that the prior action resulted in a

6    dismissal without prejudice, so long as the determination being accorded preclusive effect was

7    essential to the dismissal." *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987).  GJG cites

8    to *WMX Technologies, Inc. v. Miller* for the proposition that "when a district court expressly

9    grants leave to amend, it is plain that the order is not final." *Id.* (citing *WMX Technologies, Inc. v.*

10   *Miller*, 104 F.3d 1133 (9th Cir. 1997)).  But *WMX* addresses whether the decision is sufficiently

11   final as to be *appealable*.  *Id.* at 1136.  This is a separate issue from whether the decision is

12   sufficiently final as to have *preclusive effect*—indeed, "[t]o be 'final' for collateral estoppel

13   purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291 [governing

14   appeals jurisdiction]." *Luben*, 707 F.2d at 1040.

15                    c.    Privity of Parties

16         The third element is clearly met.  There is no dispute that the party against whom issue

17   preclusion would be asserted—GJG—was a party at the first proceeding.

18                    d.    Material Alteration

19         The "touchstone" of the prevailing party inquiry is a "material alteration of the legal

20   relationship of the parties" that is "marked by 'judicial imprimatur.'" *CRST Van Expedited, Inc. v.*

21   *EEOC*, 136 S. Ct. 1642, 1646 (2016) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch.*

22   *Dist.*, 489 U.S. 782, 791–92 (1989) and *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't*

23   *of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).  Issue preclusion materially alters GJG and

24   SG's legal relationship by precluding GJG from relitigating the substantive issue of substantial

25   similarity between GJG's game and the current version of SG's game, the effect of which is to bar

26   GJG from further asserting the copyright infringement claim against SG's accused game.  GJG

27   can no longer seek damages or injunctive relief for any such infringement.  Such preclusive effect

28   constitutes a judicially sanctioned change in the parties' legal relationship.

United States District Court
Northern District of California

2.      Claim Preclusion

The doctrine of claim preclusion allows "a judgment on the merits in a prior suit [to] bar[] a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979).  The bar extends beyond issues that were actually litigated, encompassing all claims based on the same cause of action that were brought or could have been brought.  *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011).  The three elements for claim preclusion are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017).  The Court also addresses these factors in turn.

a.      Identical Issues

The first element is met.  When considering whether claims are identical for claim preclusion purposes, the Ninth Circuit considers: "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important."  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).  Any subsequent litigation surrounding GJG's and SG's two games would arise from the same transactional nucleus of facts, involve the same copyright, and implicate substantially the same evidence.  Having lost on the merits of the core and indispensable element of substantial similarity in protected elements, GJG would be precluded from bringing a *claim* of copyright infringement against SG's current version of *Cannon Shot!*.

b.      Final Judgment

The second element is also met.  A federal judgment typically becomes final for claim preclusion purposes "when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment."  *Clay v. United States*, 537 U.S. 522, 527 (2003).

As described above in analyzing finality for purposes of issue preclusion, the Court's

8

dismissal of the claim "as a matter of law" is a merits determination on the substantive copyright claim that is sufficiently firm and "not tentative, provisional, or contingent" for purposes of claim preclusion. *See Arpaio*, 951 F.3d at 1007. No issues are left to adjudicate. *See Clay*, 537 U.S. at 527. As for the same reasons noted above, when GJG failed to file an amended complaint, it elected to stand on the strength of its complaint. *See Karmo*, 2019 WL 13095278, at *1. Once the time ran to amend, there was nothing left to adjudicate. *See also AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 32 (1st Cir. 2005) (holding that "the dismissal in fact ended the litigation on the merits and left nothing for the court to do but execute the judgment, and thus is properly considered a 'final judgment' for federal claim preclusion purposes") (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74 (1981)) (cleaned up).

Much for the reasons stated above, the fact that the dismissal included leave to amend likewise does not defeat finality for claim preclusion purposes. A dismissal with leave to amend can have preclusive effect "so long as the determination being accorded preclusive effect was essential to the dismissal." *Deutsch*, 823 F.2d at 1364. Finality crystallized when the time ran to file an amended complaint.

A dismissal may be final without having a separate Rule 54 or 58 judgment entered. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982); *see also Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985) ("[L]ess than technical compliance [with Rule 54(b)] will suffice when neither party is prejudiced by the lack of formality . . . [the] order was sufficiently final for res judicata purposes even if not appealable."). The First Circuit has explained that "[t]here might be cases that would tempt a court to apply a more flexible approach to defining finality for federal claim preclusion purposes." *AVX*, 424 F.3d at 32; *see* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 4434 ("There may be some need nonetheless to expand finality in support of claim preclusion.").

Here, the Court's dismissal disposing of the entire complaint—consisting of only a single copyright claim—constituted a final judgment for purposes of claim preclusion.

c. <u>Privity of Parties</u>

The third element is likewise met. There is no dispute that the party against whom claim

9

United States District Court
Northern District of California

1   preclusion is asserted—GJG—was a party at the first proceeding, and the party which would

2   assert claim preclusion is SG, the defendant herein.

3             d.   Material Alteration

4        Claim preclusion in this case would obviously constitute a "material alteration of the legal

5   relationship of the parties" that is "marked by 'judicial imprimatur.'"  *CRST Van Expedited*, 136

6   S. Ct. at 1646.

7        3.   Voluntary Dismissal

8        Lastly, GJG argues that this case ended with a voluntary dismissal without prejudice

9   pursuant to Rule 41(a)(1)(A)(i), which does not materially alter the legal relationship between the

10  parties.  Opp. at 4–5; Docket No. 106.  This argument is unpersuasive.

11       Under Rule 41(a)(1), "the plaintiff may dismiss an action without a court order by filing a

12  notice of dismissal before the opposing party serves either an answer or a motion for summary

13  judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  Ordinarily, voluntary dismissal "is effective on filing

14  and no court order is required" to effectuate it.  *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th

15  Cir. 1997).  GJG argues that its voluntary dismissal is effective because the two conditions of Rule

16  41(a)(1) are met: GJG has filed its notice of voluntary dismissal, and SG has not filed an answer or

17  motion for summary judgment.  Typically, standing alone, such a dismissal bar any issue or claim

18  preclusive effect.  As discussed above, the dismissal by GJG was filed *after* the stated time for

19  GJG to amend, and this Court's ruling on the merits effectively became final on January 7, 2023,

20  *before* GJG filed its voluntary dismissal.  GJG's dismissal did not have a nunc pro tunc effect of

21  undoing the final Order.

22       On a more basic level, courts typically find that a dismissal without prejudice does not

23  materially alter because the defendant remains at risk of being sued again and does not obtain

24  benefit of a ruling on the claims' merits.  *See Lang v. Morris*, 2011 WL 6055513, at *3 (N.D. Cal.

25  Dec. 6, 2011)).  But here, because of claim and issue preclusion, there is no such risk.  The

26  dismissal order of the Court stands in contrast to cases where the dismissal was based on a

27  procedural defect, a defect which could possibly be cured by amendment.  Here, given this Court's

28  ruling based on its application of the extrinsic test and its assessment of the objective facts of the

1    nature and features of the games at issue, GJG has failed to suggest any facts it could allege that

2    would change the analysis and conclusion.  *Cf. e.g.*, *Oscar v. Alaska Dep't of Educ. & Early Dev.*,

3    541 F.3d 978, 979 (9th Cir. 2008) (holding that dismissal without prejudice did not confer

4    prevailing party status upon the defendant when the dismissal is based on a procedural defect, *i.e.*,

5    plaintiff administrative complaint was not signed, rather than on the merits); *Breaking Code*

6    *Silence v. Papciak*, No. 21-CV-00918-BAS-DEB, 2022 WL 4241733, at *1 (S.D. Cal. Sept. 13,

7    2022) (holding the same where there is no indication that the court dismissed on the merits after a

8    full consideration of the law and facts or that defendants ever raised a preclusion argument).

9         In conclusion, SG is the prevailing party and is thus eligible for attorney's fees.

10   B.   <u>Discretionary Factors</u>

11        The Court next turns to the discretionary factors to determine whether an award of

12   attorney's fees is appropriate.

13        1.   <u>Degree of Success</u>

14        The Court first considers the degree of success achieved by the prevailing party.  "This

15   factor weighs more in favor of a party who prevailed on the merits, rather than on a technical

16   defense."  *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-MMC, 2022 WL 17812925, at

17   *4 (N.D. Cal. Dec. 19, 2022) (citing *Fogerty*, 94 F.3d at 556).  As discussed above, the Court has

18   unequivocally adjudicated the merits of GJG's copyright claim.  "The [C]ourt has found that the

19   FAC does not plausibly state claim for copyright infringement, and thus Defendant [SG] is the

20   prevailing party on [GJG's] sole claim under the Copyright Act.  Accordingly, this factor weighs

21   in favor of granting [SG's] requested costs and fees."  *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*,

22   No. CV 21-09328-FWS-JPR, 2022 WL 3584501, at *9 (C.D. Cal. Aug. 4, 2022) (finding this

23   favor weighs in favor of the defendant even where the FAC was dismissed with leave to amend).

24   GJG thus has achieved a significant degree of success.

25        2.   <u>Objective Unreasonableness</u>

26        Courts "give substantial weight to the objective reasonableness of the losing party's

27   position."  *Kirtsaeng*, 579 U.S. at 199–200, 209.  "[T]he imposition of fees against a party with an

28   objectively reasonable litigation position generally does not promote the purposes of the

United States District Court
Northern District of California

Copyright Act." *Shame on You Prods., Inc. v. Banks*, No. CV1403512MMMJCX, 2016 WL 5929245, at *6 (C.D. Cal. Aug. 15, 2016), aff'd, 893 F.3d 661 (9th Cir. 2018). "[O]bjective unreasonableness [is typically found] in situations in which 'the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious.'" *Id.* at *7. A district court may base a finding of objective unreasonableness "on the distinct lack of similarity between the two works" under the extrinsic test which objectively compares specific expressive elements. *Shame On You Prods.*, 893 F.3d at 666–67 (finding a copyright claim concerning two screenplays was objectively unreasonable because the only similarities between the two were their themes and a few minor plot points).

Here, the "[C]ourt did not find the substantial similarity issue to be close." *Shame On You Prods.*, 893 F.3d at 667. The Court concluded that the works were sufficiently presented and applied "the extrinsic test to determine whether there are objective similarities between the games." Order at 13. The Court's finding is clear: common features between the games are unprotectable under well-settled copyright law; none of the protected elements of GJG's game— colors, decorative shapes, animations, design levels, and layouts other than the basic design of the cannon and bucket game—are substantially similar. *Id.* at 14–15. Overall, the Court held that "GJG has no viable copyright claim as a matter of law" because "the protected elements of the works are not substantially similar." *Id.* at 15–16. Thus, GJG's claim was objectively unreasonable. *See Shame on You Prods.*, 2016 WL 5929245, at *8 ("Likewise, due to the lack of any meaningful or legally cognizable similarity between Walk of Shame and Darci's Walk of Shame, the Court finds that the lack of substantial similarity was obvious, and Plaintiff's suit objectively unreasonable. This factor favors awarding attorneys' fees."); *cf. Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013) (declining to find objective unreasonableness where the case "was a close and difficult [one]").

GJG raises two counterarguments. First, it argues that "the notion that [its] copyright claim was objective reasonably cannot be squared with the fact that the Court granted [it] leave to amend." Opp. at 7. However, this argument overlooks the Court's finding that "the [current-version] works have been sufficiently presented." Order at 13. Leave to amend left the door open

1    to possible claims against other versions of SG's games.  There is no inconsistency between the

2    grant of leave to amend and the objective unreasonableness of GJG's copyright claim against the

3    current version of SG's game.

4         Second, GJG argues that if SG believed its Rule 12(b)(6) challenge "was a clear cut

5    winner," then SG would not have chosen to "pair it with a [Rule] 12(b)(2) challenge."  Opp. at 7–

6    8.  But this Court will not fault a party for comprehensively litigating its case.  SG has every right

7    to move to dismiss on multiple grounds, particularly because SG would forfeit those defenses had

8    it not brought them.  Repl. at 8.

9         In conclusion, this factor favors awarding attorney's fees.

10            3.    <u>Deterrence and Compensation</u>

11        The Copyright Act's "primary objective" is to "encourage the production of original

12   literary, artistic, and musical expression for the good of the public."  *Fogerty*, 510 U.S. at 524.

13   "[T]he objective unreasonableness of a losing party's claim can be a relevant indicator of whether

14   the Act's primary objective is being served by the litigation.  *SOFA Ent., Inc. v. Dodger Prods.*,

15   Inc., 709 F.3d 1273, 1280 (9th Cir. 2013); *accord Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d

16   351, 359 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) ("[A]n award of costs and fees

17   is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing

18   unreasonable claims.").  Although "it is not the purpose of the Copyright Act to deter litigants

19   from bringing potentially meritorious claims, even though those claims may be ultimately

20   unsuccessful," *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 WL 1724478, at *6 (N.D.

21   Cal. Apr. 29, 2014), "[s]oftware developers" uniquely "cannot afford to have obstructions placed

22   in their path by claims of infringement that lack a reasonable chance of success . . . " *Oskar Sys.*,

23   *LLC v. Club Speed, Inc.*, No. CV 09-3854 AHM SHX, 2010 WL 4235812, at *2 (C.D. Cal. Oct.

24   20, 2010).

25        For the reasons stated above, GJG brought a copyright claim that lacked a reasonable

26   chance of success.  SG has submitted evidence that GJG was aware that the rules and mechanisms

27   of video games are commonly found unprotectable.  *See* Docket No. 76-1 Exh. 1 (Declaration of

28   Craig Whitney ("Whitney Decl.")) ¶¶ 13–16 (declaring that rules including "[game] rules and

United States District Court
Northern District of California

13

game mechanics [are] generally not protectable;" "generic representations common to [a specific] type or genre of mobile game" are not protectable; "simple geometric shapes" are unprotectable). Such was the case here where most common features across the games were unprotectable, *e.g.*, "the cannon and bucket 'animations,' functional 'shapes,' and 'movement' of the game pieces. *See* Order at 14.  Given the objective unreasonableness of GJG's claim, the Act's primary objective of encouraging the production of original work was not served by this litigation.  *Cf. SOFA*, 709 F.3d at 1280 (finding the plaintiff's copyright claim objectively unreasonable, especially because the plaintiff should have known that it had little chances of success in light of the "education" that it received in another lawsuit).  This factor moderately favors awarding attorney's fees.

### 4. Motivation

SG does not allege that GJG acted in bad faith bringing this action.  The Court also finds "no persuasive evidence that plaintiff brought the [copyright] claim, or the case generally, for an improper motive."  *See Velasquez v. 2048 Partners*, LLC, No. 18-CV-06184-JD, 2020 WL 3035791, at *1 (N.D. Cal. June 5, 2020).  This factor weighs against attorney's fees.

### 5. Frivolousness

"[A] frivolous claim under the Copyright Act is one that, in either the factual or legal assertions, is clearly baseless, involving fantastic or delusional scenarios.  Put another way, a case is deemed frivolous only when the result is obvious or the arguments are wholly without merit." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (citation and quotation omitted).  GJG's copyright claim, while unmeritorious, was not frivolous.  This factor weighs against attorney's fees.

On balance, three factors weigh in favor of awarding attorney's fees.  Although the two factors weigh against attorney fees, bad faith and frivolousness are not necessary to a fee award under the Copyright Act.  *See Fogerty*, 94 F.3d at 560 (9th Cir. 1996) (holding that "a finding of bad faith, frivolous or vexatious conduct" is not required, attorney's fees may be awarded where a party's copyright claim "was neither frivolous nor instituted in bad faith," but was simply

14

"objectively weak").

In conclusion, an award of attorney's fees is appropriate under Section 505 of the Copyright Act.

## IV.    AMOUNT OF THE AWARD

SG requests a total award of $165,351.17 in attorney's fees and costs for legal services rendered between December 1, 2019, and January 31, 2023.  Docket No. 111 ¶¶ 3–7.

"Once a party is found eligible for fees, the district court must then determine what fees are reasonable." *Kohler v. Eddie Bauer LLC*, 792 F. App'x 446, 448 (9th Cir. 2019).  "District courts apply the lodestar method to determine a reasonable fee." *Id*.  "The lodestar amount is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Id*.  The party seeking fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

A.    Reasonable Hourly Rates

SG seeks fees for work performed by three attorneys at Frankfurt Kurnit Klein & Selz PC: (1) Craig Whitney, a partner whose hourly billing rates on this matter are $825 in 2019, $875 in 2020, $900 in 2021, $950 in 2022, $1,025 in 2023, (2) Nicole Bergstrom, a counsel whose hourly billing rates on this matter are $525 in 2020, $600 in 2021, $675 in 2022, and $775 in 2023, and (3) Amanda Barkin, a junior associate whose hourly billing rate on this matter is $450.  Docket No. 104 ¶ 11.

The Court finds these hourly rates reasonable.  First, "in an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505." *Lynwood Investments CY Limited v. Konovalov*, No. 20-CV-03778-MMC, 2023 WL 2918754, at *6 (N.D. Cal. Apr. 11, 2023).  Here, the rates claimed are the rates actually charged.  *See* Docket No. 104 ¶ 11; *Carson v. Billings Police Dep't*, 470 F.3d 889,

892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his client are part of the market.").

Second, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Opperman v. Kong Techs., Inc.*, No. 13-CV-00453-JST, 2018 WL 11417568, at *6 (N.D. Cal. Mar. 27, 2018). Although SG fails to submit such evidence, the Court considers "rate determinations in other cases . . . [as] satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Rates similar to such requested by SG have been approved in the past. *See e.g.*, *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475–$975 per hour for partners and $300–$490 per hour for associates are reasonable."); *Washington v. ViacomCBS, Inc.*, No. 220CV00435CBMPJW, 2021 WL 6134375, at *4 (C.D. Cal. Dec. 9, 2021) (in a copyright case, approving hourly rates up to $850 for partners, $745 for associates); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *7 (N.D. Cal. Aug. 8, 2017) (in a patent case, approving Orrick's hourly rates of up to $1,200 for a partner and $800 for an associate). Regardless, GJG does not object to the reasonableness of the requested rates. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.").

Third, "[t]he reasonable hourly rate must be based on the experience, skill, and reputation of the attorney requesting fees." *Opperman*, 2018 WL 11417568, at *6. SG has submitted evidence of attorneys' skill, experience, and reputation. *See e.g.*, Docket No. 104 ¶ 11 (Whitney who graduated from Harvard Law School in 2021 is "the former Chair of the Copyright Law Committee and currently on the Board of Directors of the American Intellectual Property Law Association" and "frequently represent[s] media, technology, and video game companies in copyright infringement actions;" Bergstrom who graduated from Columbia Law School in 2013

1   has "exceptional legal skills and familiarity with copyright infringement defense litigation;"

2   Barkin who graduated from Columbia Law School in 2018 "litigates intellectual property cases

3   and has experience defending clients against copyright infringement actions.").

4       In conclusion, the requested rates are reasonable.

5   B.   Hours Reasonably Expended

6       "Reasonable hours are those hours that 'would have been undertaken by a reasonable and

7   prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery.'"

8   *Washington*, 2021 WL 6134375, at *5 (quoting *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir.

9   2003)).  Hours are excludable if a court finds them "excessive, redundant, or otherwise

10  unnecessary."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

11  "Normally, courts will conduct an 'hour-by-hour analysis of the fee request" and specifically

12  exclude the unreasonable hours.  *Giganews, Inc.*, 2015 WL 1746484, at *5 (quoting *Gonzalez v.

13  City of Maywood*, 729 F.3d at 1202).  But "when faced with a massive fee application the district

14  court has the authority to make across-the-board percentage cuts either in the number of hours

15  claimed or in the final lodestar figure as a practical means of trimming the fat from a fee

16  application."  *Id*. (internal quotation omitted).  A court that reduces the hour through the former

17  method must explain its reasons.  But a court may impose a small reduction no greater than 10

18  percent "without a more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106,

19  1112 (9th Cir. 2008).

20      SG seeks fees for the following three categories of legal work: (1) $98,847 for preparing

21  the Rule 12(b)(6) portion of the Motion to Dismiss the Complaint and the Motion to Dismiss the

22  First Amended Complaint, Docket Nos. 20, 75; (2) $34,790 for case management matters,

23  including the Rule 26(f) conference; and (3) $31,373 for preparing this instant Motion for

24  Attorney's Fees.[1]  *Id*.; Docket 111 ¶¶ 3–7.

25      1.   Two Motions to Dismiss ("MTDs")

26      The MTDs each have two parts: a Rule 12(b)(6) argument alleging failure to state a claim,

27

28  [1] SG submitted an 18-page invoice showing the three counsels' billing records on this matter.  The
    Court sums up the total hours billed.

United States District Court
Northern District of California

and a Rule 12(b)(2) argument alleging about jurisdictional defects.  SG seeks fees *only* for the work performed on substantive copyright issues, *i.e.*, Rule 12(b)(6) issues.  MAF at 10.

While some time entries reflect work done exclusively on the Rule 12(b)(6) issues, other time entries reflect work done on both the Rule 12(b)(6) and Rule 12(b)(2) issues.  For example, Mr. Whitney's entry of "Review and revise *copyright infringement section* of motion to dismiss" reflects exclusively Rule 12(b)(6) work, while his entry of "Further review and revision of motion to dismiss" reflects work done on both issues.  *See* Docket No. 116 at 5.  SG has separated out and color-marked these two kinds of time entries in the billing records.[2]  Docket No. 104 ¶¶ 5–6.  SG seeks fees in full for the work done exclusively on Rule 12(b)(6) issues, and 50% fees for work done on both Rule 12(b)(6) and Rule 12(b)(2) issues:

|  | Entries for Rule 12(b)(6) Work | Entries for Rule 12(b)(6) and Rule 12(b)(2) Work |
|---|---|---|
| Proposed Recovery | 100% fees | 50% fees |
| Requested Amount | $17,232.50 | $81,614.50 = $163,229 x 50% |
| Total | **$98,847** = $17,232.50 + $81,614.50 | |

*Id.*

GJG objects.  First, GJG argues that SG is not entitled to the full amount of $17,232.50 for hours expended exclusively on Rule 12(b)(6) work.  GJG found these hours excessive because SG would have expended fewer hours had SG not raised or appealed the Rule 12(b)(2) issues.  Opp. at 9–10.  This argument is nonsensical.  The requested fees in the amount of $17,232.50 are only for hours expended on Rule 12(b)(6) issues, wholly unrelated to hours expended on Rule 12(b)(2) issues.  No evidence indicates otherwise that these hours are unreasonable.  *See Armstrong*, 318 F.3d at 971 (hours are reasonable where "a reasonable and prudent lawyer" would have undertaken those hours to "advance or protect his client's interest in the pursuit of a successful recovery").

---

[2] The former is in yellow, the latter in purple.

United States District Court
Northern District of California

1    Second, GJG urges the Court to reduce SG's bill for so-called "block billing."  Opp. at 10.

2   "Block billing is the time-keeping method by which each lawyer . . .  enters the total daily time

3   spent working on a case, rather than itemizing the time expended on specific tasks." *Giganews*,

4   2015 WL 1746484, at *25 (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir.

5   2007)).  "Because block billing 'makes it more difficult to determine how much time was spent on

6   particular activities,' district courts may "reduce hours that are billed in block format" to avoid the

7   potential for padding." *Id*. (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d

8   1533, 1554 n.15 (10th Cir. 1996)).

9    SG's records are not blocked.  Even GJG's example of SG's "blocked billing"—a time

10   entry stating "Draft and revise motion to dismiss"—still itemizes the 3.10 hours that counsel

11   expended on the specific tasks of drafting and revising a motion.  *See* Opp. at 10 (citing Docket

12   No. 116-1 at 3); *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (holding that "minimal"

13   descriptions are sufficient to support an award of attorneys' fees so long as "they establish that the

14   time was spent on the matters for which" the party seeks fees).  The hours and task specification

15   are not too general or repetitive.  *Cf. Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No.

16   CV1810513PSGKSX, 2020 WL 7425320, at *7 (C.D. Cal. Oct. 20, 2020) (reducing hours where

17   the court cannot "properly discern the nature of the work performed, *e.g.*, drafting, research,

18   revising, editing, cite-checking etc., or the reasonableness of the time expended on those task"

19   from the general and repetitive task descriptions).  Other entries in the records itemize tasks in

20   even greater specificity.  *See e.g.*, Docket No. 116-1 at 3 ("Draft motion to dismiss and research in

21   support of same; Review docket entries and conference regarding response date; telephone call

22   and correspondence with D. Mello regarding response date" for 3.10 hours on January 21, 2020).

23   Lastly, although SG's counsel at times failed to separate the time expended between Rule 12(b)(6)

24   and Rule 12(b)(2) work, this is not enough to constitute block billing.  *See Campbell v. Nat'l*

25   *Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010) ("Block billing is a time-

26   keeping method where an attorney enters the total daily time spent working on a case, rather than

27   itemizing the time spent on a specific task.").

28    Third, GJG opposes the 50% allocation for time entries that cover both Rule 12(b)(6) and

Rule 12(b)(2) issues.  It argues that Rule 12(b)(2) issues are far more complicated—factually and legally—than Rule 12(b)(6) issues, as evidenced by the page length and evidentiary support between them.  Opp. at 10.  SG counters that while GJG's briefs skewed towards Rule 12(b)(2) issues, SG's own motion papers are nearly equally divided between the two.  Repl. at 11 (citing Docket Nos. 20, 29, 75, 87).  Here, despite the similar length of the two issues in SG's motion papers, the Court agrees with GJG that SG likely spent more time on the Rule 12(b)(2) issues in light of its opponent's skewed focus and the highly contested nature of the Rule 12(b)(2) issues in this case.  Accordingly, the Court only awards 40% recovery for time entries that cover both Rule 12(b)(6) and Rule 12(b)(2) issues.  The fees are reduced as follows:

|  | Entries for Rule 12(b)(6) Work | Entries for Rule 12(b)(6) and Rule 12(b)(2) Work |
|---|---|---|
| Proposed Recovery | 100% fees | 40% fees |
| Requested Amount | $17,232.50 | $65,291.6 = $163,229 x 40% |
| Total | **$82,524.10** = $17,232.50 + $65,291.60 | |

### 2.   Case Management Matters

SG seeks to shift a total amount of $34,790 on case management work.  MAF at 11; *see e.g.*, Docket No. 116 at 11 (entry of "Prepare for upcoming case management conference" for 0.3 hours).  The Court allows a 30% recovery on case management fees in the amount of $10,437 for two reasons.  First, case management work necessarily involves both the substantive and procedural aspects of the case and SG has agreed to only seek fees related to the former.  Second, there appears to be some duplication of work among the attorneys.  *See e.g.*, Docket 161-1 at 15 (two attorneys billing for reviewing case management order on the same day).

### 3.   Motion for Attorney's Fees ("MAF")

The last category is fees incurred in connection with this instant MAF in the amount of $31,373.  "[T]ime spent in establishing the entitlement to and amount of the fee is compensable" because "it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee."  *Camacho*, 523 F.3d

1  at 981.  GJG does not oppose this category of fees.  The Court finds the hours reasonable and will

2  award the MAF fees as requested.

3          4.    <u>Summary</u>

4        In total, SG's cognizable attorney's fees amount to **$124,334.10**.  This amount consists of

5  $82,524.10 for work related to the Rule 12(b)(6) portions of the two MTDs, $10,437  for work

6  related to case management, and $31,373 for work related to the MAF.  However, the Court will

7  apply a 10% across-the-board deduction reflecting some degree of inefficiency and duplicative

8  work.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (permitting the

9  district court to "impose a small reduction, no greater than 10 percent—a "haircut"—based on its

10  exercise of discretion").  The final fee award is $111,900.69.

11  C.    <u>Costs</u>

12        In addition to attorney's fees, SG seeks $339.17 in disbursement costs.  District courts

13  have discretion to award non-taxable costs to prevailing parties under statutes that provide for

14  "reasonable attorney's fees."  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th

15  Cir. 2010).  GJG does not oppose SG's requested recovery of costs.  The Court awards the

16  requested costs.  *See Misa Mfg., Inc. v. Pac. Egg & Poultry Assn.*, No. CV 86-1495 AHS, 1987

17  WL 119913, at *3 (C.D. Cal. Jan. 7, 1987) (allowing disbursement costs for "Federal Express,

18  postage and photocopying in the amount of $547.35").

19                                      **V.**      **CONCLUSION**

20        For the foregoing reasons, the Court **GRANTS** SG's Motion for Attorney's Fees in the

21  amount of $111,900.69 in attorney's fees and $339.17 in costs for a total of **$112,239.86**.

22        This order disposes of Docket No. 103.

23

24        **IT IS SO ORDERED**.

25

26  Dated: May 4, 2023

27                                   _____

28                              EDWARD M. CHEN
                            United States District Judge